UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

LANNIE M. OCHOA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 2:25-CV-288 JD

## OPINION AND ORDER

Plaintiff Lannie Ochoa applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act, alleging disability beginning in October 2020. Her claims were rejected, leading to a review by an Administrative Law Judge ("ALJ") who concluded that Plaintiff was not disabled. The Appeals Council denied her request for review, and Plaintiff now seeks judicial review. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

### A.  Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## B. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

2

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1.  Whether the claimant is currently engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment;

3.  Whether the claimant's impairment meets or equals one listed in the regulations;

4.  Whether the claimant can still perform past relevant work; and

5.  Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C.  The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "lumbar degenerative disc disease; ankylosing spondylitis; osteoarthritis of the bilateral feet; morbid obesity; dysfunctional uterine bleeding with anemia; PCOS; history of carpal tunnel syndrome with right carpal tunnel release; depressive disorder; and ADHD." (ALJ's Decision, R. at 20.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*)

Plaintiff testified as follows: She can't work due to fatigue and back and leg pain. She has low iron levels and is always tired. In the past, she received iron transfusions but discontinued them after experiencing an allergic reaction. She has been diagnosed with ankylosis spondylitis and lumbar generative disc disease with radiculopathy. She has anxiety and depression. She gets cold easily in her hands and feet. In 2011, she was diagnosed with ADHD and takes medication to manage the condition. She drives short distances and helps with homeschooling her stepdaughter. She lives in a third-floor apartment and walks her dog for about half a block, after which she requires six to seven hours to recover.

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ recounted Plaintiff's testimony (ALJ's Decision, R. at 23) and found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" (*Id.*, R. at 24). At the same time, the ALJ determined that Plaintiff's "statements concerning the

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the frequency and severity reflected within the medical evidence and other evidence in the record . . . ." (*Id.*)

The ALJ noted that Plaintiff had an orthopedic consultation with Dr. Nicholas Wallace on April 18, 2024, during which Dr. Wallace noted that the MRI showed disc degeneration at L4-5 and L5-S1 but no significant stenosis to correlate to her lower extremity pain. (ALJ's Decision, R. at 27 (citing R. at 2924).) Dr. Wallace recommended conservative treatment consisting of physical therapy and weight management. He observed that Plaintiff had not had any injections and had been treated with only NSAIDS and activity modification. (*Id.* (citing R. at 2925).) Dr. Wallace's examination showed that Plaintiff's gait was intact without any assistive devices. She had full active range of motion of all 4 extremities, painless hip range of motion, no tenderness to palpation of the back, intact sensation to light touch, and normal strength. (*Id.* (citing R. at 2926).) According to the ALJ, there is nothing in the record documenting the need for six-to-seven-hour recovery after Plaintiff walks her dog.

As for anemia, the ALJ observed that, although Plaintiff is no longer receiving iron infusions, Dr. Kurra's records from March 2022 show that her symptoms have improved with her taking Depo Provera. According to Dr. Kurra, Plaintiff did not evidence a need for any IV iron. (ALJ's Decision, R. at 27–28 (citing R. at 2109–10).)

In considering the state agency physicians' findings, the ALJ disagreed with their conclusion that Plaintiff's impairments are not severe. She also disagreed that Plaintiff is capable of work at the medium level of exertion, as they did not have the benefit of later evidence that supports the sedentary exertion level. (*Id.*) On the other hand, the ALJ agreed with the state agency psychological consultants that, based on the record, Plaintiff has moderate limitation in

5

the ability to concentrate, persist, or maintain focus. The state agency psychological consultants found that Plaintiff "could understand, remember, and carry out detailed but not complex tasks." The ALJ reasoned that such limitation was not restrictive enough because Plaintiff experienced fatigue and brain fog due to anemia and sometimes forgot to take her ADHD medication.[2] As a result, the ALJ adopted a more restrictive limitation, consisting of "unskilled work with only occasional changes in the work setting." (ALJ's Decision, R. at 31.)

> The ALJ concluded that Plaintiff has the RFC to perform
>
> sedentary work[3] . . . except the claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can have no exposure to extreme cold and no exposure to unprotected heights or dangerous moving machinery. The claimant can frequently handle and finger with the right upper extremity. The claimant can understand, remember, and carry out simple instructions, make simple work-related decisions, and can tolerate occasional changes in the work setting.

(ALJ's Decision, R. at 23.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that there were jobs in significant numbers in the national economy that Plaintiff could perform:

- order clerk—DOT #209.567-014; SVP 2; sedentary (14,300 jobs)

- charge account clerk—DOT #205.367-014; SVP 2; sedentary (23,100 jobs); and

---

[2] Plaintiff reported to the consultative examiner that when she takes her ADHD meds, her focus is great but if she forgets the medication, it is not great. (ALJ's Decision, R. at 30 (citing R. at 2137).)

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

- call out operator—DOT #237.367-014; SVP 2; sedentary (14,100 jobs).

(ALJ's Decision, R. at 32; R. 67–68.) The VE also testified that employers typically allow no more than 10% of time being off task, not considering breaks for lunch and 15–20 minute breaks in the morning and afternoon. In addition, employers generally do not tolerate more than one absence a month, up to twelve absences a year, which includes coming in late or leaving early. (R. at 68.)

Plaintiff's attorney followed up the VE's testimony by asking whether the hypothetical person could do the listed jobs if she could only occasionally handle and finger with her right hand and clarified the VE's answer about absenteeism. The attorney did not challenge the VE's testimony concerning the jobs that the hypothetical person could perform. (*See* R. at 70–72.) Relying on the VE's testimony, the ALJ concluded that, considering her "age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 33.) As a result, the ALJ found Plaintiff to be not disabled.

## D. Discussion

### (1) *The RFC Assessment*

In her appeal, Plaintiff contends that the ALJ erred in failing to properly assess her physical and mental RFC as required by SSR 96-8p. Plaintiff maintains that the ALJ determined that she was limited to sedentary work without citing support from any medical opinion, test results, or testimony. According to Plaintiff, although the ALJ credited Plaintiff with suffering from fatigue, she identified no evidence that Plaintiff will be sufficiently accommodated if she is

limited to standing and walking for up to one-third of the workday. Similarly, Plaintiff argues that the ALJ failed to account for her complaints of pain.

Plaintiff likewise argues that the ALJ did not provide an evidentiary basis for supporting her mental RFC finding, namely, that Plaintiff is able to understand, remember, and carry out simple instructions. Plaintiff notes that a limitation to simple instructions is not a catchall limitation, so the ALJ had to justify its application. Plaintiff also insists that the ALJ did not account in the RFC for the opinion of one of the state agency psychologists that she had a moderate limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace.

The Court will address the latter argument only as it is sufficient to warrant remand.

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id.*

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's

8

step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine

whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

In determining Plaintiff's mental limitations in the RFC, the ALJ considered the findings of the stage agency psychologists. In the checkbox portion of the MRFCA, each of the three psychologists checked that Plaintiff was moderately limited in "[t]he ability to maintain attention and concentration for extended periods." (R. at 136, 137, 147, & 157.) Also, as relevant here, one of them, Dr. Ken Levko, Ph.D., checked that Plaintiff was moderately limited in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 137.) In the narrative section of Plaintiff's RFC, each psychologist assessed that Plaintiff "could understand, remember, and carry out detailed but not complex tasks. [Plaintiff] could attend to tasks for a sufficient period to complete tasks. [Plaintiff] could manage the stresses involved with detailed work-related tasks." (ALJ's Decision, R. at 30–31 (citing Exs. 6A, 7A, & 10A).) The ALJ found these "opinions somewhat persuasive," but ultimately limited Plaintiff to unskilled work because, at times, she forgets the ADHD medication (shown to improve her concentration); experiences fatigue; and experiences brain fog due to anemia. (*Id.*, R. at 31.) Specifically, the ALJ found that "[t]he claimant can understand, remember, and carry out simple instructions, make simple work-related decisions, and can tolerate occasional changes in the work setting." (ALJ's Decision, R. at 23.) However, even though Dr. Levko's additional checkbox finding that Plaintiff would have issues staying on task was not incorporated into his narrative opinion, the ALJ did not separately address this limitation.

10

As Plaintiff points out, although the ALJ assessed greater mental restrictions than the state agency psychologists, those restrictions alone do not account for Plaintiff's CPP limitations. *See Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("We have also made clear that in most cases 'employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace,' and thus, alone, are insufficient to present the claimant's limitations in this area.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). That's because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). The ALJ accepted that Plaintiff sometimes forgets her ADHD medication and that without this medication her concentration and focus "[are] not great" (ALJ's Decision, R. at 22, 26, 29, 30), but did not provide a corresponding limitation in the RFC. Instead, according to the ALJ, she "has accounted for this by limiting the claimant to understanding, remembering, and carrying out simple instructions and making simple work-related decisions, and tolerating only occasional changes in the work setting." (*Id.*, R. at 29.) But that's a conclusion without the accompaniment of the logical bridge. That is to say, the ALJ has not explained how these restrictions actually accommodate Plaintiff's moderate CPP limitations so that she is capable of performing work on a regular and continuing basis without exceeding the off-task parameters. What's more, the ALJ failed to address the fact that one of the state agency psychologists, Ken Lovko, Ph.D., indicated on the MRFCA worksheet that Plaintiff had a moderate limitation in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 137.) That's significant because the

11

VE's testimony makes clear that Plaintiff must remain on-task at least 90% of the workday, yet the ALJ's decision did not address her ability to do so one way or the other. *See Lothridge*, 984 F.3d at 1233 ("The ALJ's formulation here says nothing about whether [the plaintiff] is capable of performing work at a sustained pace over an entire workday.")

In his response, the Commissioner insists that the ALJ sufficiently explained why Plaintiff retained the ability to understand, remember, and carry out simple instructions, but does not cite any such explanation in the decision. Moreover, although the Commissioner points out that Plaintiff's ADHD could be controlled with medication, he overlooks that the ALJ recognized that "she does forget the medication at times." (ALJ's Decision, R. at 31.) The Commissioner also contends that Plaintiff is advocating for a bright line rule that "simple instructions" can never account for moderate limitations in CPP. Yet as the discussion above demonstrates, a ruling for Plaintiff is not based on any bright line rule, but on the facts of this case. *See also Rhodes v. Comm'r of Soc. Sec.*, No. 1:24-CV-401-ALT, 2025 WL 2751139, at *4 (N.D. Ind. Sept. 25, 2025). ("[W]hether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis.").

The Commissioner also insists that, since a moderate limitation means that an individual's ability to function is "fair," the RFC corresponds with Plaintiff's degree of impairment. (Def.'s Br., DE 18 at 8 (citing 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(F)(2).) The Court respectfully disagrees. "[W]hether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis." *Rhodes v. Comm'r of Soc. Sec.*, No. 1:24-CV-401-ALT, 2025 WL 2751139, at *4 (N.D. Ind. Sept. 25, 2025). Here, as Plaintiff points out, the ALJ failed to address the fact that one of the state agency psychologists, Ken Lovko, Ph.D., noted in the checkbox worksheet that Plaintiff

12

had a moderate limitation in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 137.) What's more, Dr. Lovko's narrative assessment, which was identical to the narratives of the of the other state agency psychologists, does not account for this limitation. So, to the extent that the Commissioner implies that the ALJ relied on Dr. Lovko's narrative opinion, that argument is misplaced. It's not enough for the ALJ to rely on the narrative RFC recommendations, unless the narrative accounts for all the limitations that an expert has identified "including specific questions raised in the check-box of standardized forms." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("It is well-established that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.") (citations omitted)). The ALJ's RFC assessment is thus incomplete: it states that Plaintiff "can understand, remember, and carry out simple instructions" but it does not explain how Plaintiff could consistently finish her work tasks over the course of the workday despite her CPP limitations. *Cf. Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (finding that "the ALJ reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings").

As for the ALJ ignoring Dr. Levko's finding that Plaintiff is moderately limited in her "ability to complete a normal workday and workweek without interruptions" and "to perform at a consistent pace," the Commissioner brushes this issue aside with simple math: only one state agency psychologist made this assessment but the other two did not, so the majority prevails.

13

(*See* Def.'s Br., DE 18 at 7 ("The record reflects that only one state-agency psychologist, the one who reviewed Plaintiff's prior claim, made this assessment. R. 137. By contrast, all the other state agency psychologists, including the two who reviewed the record in connection with the current claim, found that Plaintiff had "no significant" limitation in this domain.") But the ALJs do not fashion their RFC assessments by the rule of majority; their duty is to review all evidence and, among other things, to address evidence favorable to the claimant. Here, Dr. Lovko's checkbox finding is not accounted for in the RFC, and the ALJ has not otherwise explained why it is inapplicable to Plaintiff's ability to work. And as stated already, the limitation is not adequately encapsulated and translated in Dr. Lovko's narrative opinion upon on which the ALJ relied. The ALJ's error casts doubt on Plaintiff's ability to work for the entirety of a normal workday and workweek. *See* SSR 96-8P (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.")

Again, this error is not harmless because, in his answer to the second hypothetical, the VE testified that being off task more than 10% of a workday or being absent more than once a month, up to twelve absences a year, would be job-prohibitive. (*See* R. at 68.) As a result, it's important to understand to what extent, if at all, the ALJ believed Plaintiff's limitations in concentration, persistence, and pace would interfere with her ability to perform work. The VE should have been told about Plaintiff's limitations that the ALJ himself endorsed, or the ALJ

14

should have explained why the limitations are inconsequential, so as to ensure that the jobs the VE proposed are ones that Plaintiff can actually do. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). In other words, the VE's testimony regarding available jobs cannot be relied on as substantial evidence.

Finally, Defendant argues that the ALJ adequately explained why Plaintiff retains the capacity to do sedentary work despite her moderate limitation in CPP by pointing to evidence that the ALJ considered: Plaintiff's ADHD was controlled with medication and her examination showed adequate long-term memory and good insight and judgment; she was also able to drive, help with homeschooling, attend appointments independently, and do some house chores. But Defendant has not explained why the ALJ is excused from considering evidence that favors Plaintiff.

**(2) *Step Five***

Because remand is required, the Court will not consider Plaintiff's step-five argument. That said, the parties are free to address this issue on remand, if it's still applicable. Whether the jobs identified by the VE are obsolete is best addressed at the time of the hearing, so any error can be corrected and, if an appeal is necessary, so that a clear record can be developed. In

addition, to the extent that the DOT jobs are matched to the SOC codes, the parties should be mindful to ascertain whether there is a change in the SVP classification.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 11, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court
